# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                    No. CR 17-02690 RB

KENNETH DICKERSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the government's appeal of Magistrate Judge Fouratt's order of release for Defendant Kenneth Dickerson. Judge Fouratt ruled that strict conditions of release would be enough to prevent Mr. Dickerson from fleeing law enforcement or threatening the community. The government disagrees, citing evidence that it repeatedly failed to disclose to Judge Fouratt.

## BACKGROUND

Defendant Kenneth Dickerson is a 56-year-old man living in New Mexico. The government suspects Mr. Dickerson and another individual, Ethan Watts, of being part of a Drug Trafficking Organization (DTO) that distributes methamphetamine. (*See* Doc. 148 at 3–4.) As part of its investigation into the DTO, the government intercepted and read text messages between Mr. Dickerson and Mr. Watts. (*See id.* at 4.)

Based on the intercepted texts, the government determined that in July 2017 Mr. Dickerson gave almost all his money to Mr. Watts so Mr. Watts could buy four ounces of methamphetamine for Mr. Dickerson. (*See id.* at 6–7.) Unsettled about leaving almost all his

money to Mr. Watts for a drug transaction, Mr. Dickerson texted Mr. Watts, "ok bro if something happens kill the motherfuckers." (*See id.* at 6.)

Later that day, government agents saw Mr. Dickerson stop by Mr. Watts's residence for a few minutes. (*Id.* at 7.) As Mr. Dickerson was driving away from Mr. Watts's residence, police detained Mr. Dickerson. (*Id.*) In Mr. Dickerson's pocket and car, police found four ounces of methamphetamine, which Mr. Dickerson admitted was his. (*See id.*)

Mr. Dickerson subsequently tried to hide from Mr. Watts the fact that police had seized his methamphetamine, texting Mr. Watts, "They stole my colt python and the 4 i had im sorry but ill get you even if i have to sale my bike." (*See id.* at 8.)

Afterwards, government agents arrested and charged Mr. Dickerson for a series of crimes associated with the trafficking of methamphetamine in New Mexico, including conspiracy to possess with intent to distribute more than 50 grams of methamphetamine. (*See id.* at 10.)

**First Detention Hearing**

Mr. Dickerson appeared before Magistrate Judge Fouratt in Las Cruces, New Mexico, for a detention hearing. (*See* Doc. 106 at 1.) At the detention hearing, the government told Judge Fouratt that there was *no evidence that Mr. Dickerson possessed any firearms* during the course of the government's investigation into the DTO, (*see* Doc. 144 at 3 (emphasis added)), even though Mr. Dickerson had allegedly texted an associate, "They stole my *colt python*[1] . . ." (Doc. 148 at 8 (emphasis added)). The government also told Judge Fouratt that there was *no evidence that Mr. Dickerson made any threats against any person* during the course of the government's investigation into the DTO, (*see* Doc. 144 at 3 (emphasis added)), even though Mr. Dickerson had allegedly texted an associate, "ok bro if something happens *kill the motherfuckers*" (Doc. 148 at 6 (emphasis added)).

---
[1] A Colt Python is a well-known firearm.

Despite the government's shocking failure to correctly inform Judge Fouratt of the danger to the community Mr. Dickerson posed, Judge Fouratt still ordered that Mr. Dickerson be detained pending trial. (Doc. 120 at 2.) At the time of the detention hearing, there was no suitable third-party custodian who could watch over Mr. Dickerson if he were released, and Judge Fouratt determined that no conditions of release could reasonably ensure that Mr. Dickerson would appear in court and that Mr. Dickerson would not threaten the community. (*See* Doc. 144 at 7.)

**Second Detention Hearing**

After Judge Fouratt's ruling, Mr. Dickerson's father was identified as a potential third-party custodian. Based on this new information, Mr. Dickerson asked Judge Fouratt to reconsider his ruling, and Judge Fouratt agreed that the previously unknown information about Mr. Dickerson's father warranted reconsideration of Mr. Dickerson's detention. (*See id.*)

In reconsidering Mr. Dickerson's detention, Judge Fouratt noted some red flags that suggested Mr. Dickerson would flee or be a danger to the community: among other things, Mr. Dickerson had multiple brushes with law enforcement in the past; he did not appear as required for state court proceedings on multiple occasions; and he had previously failed to satisfy the conditions of state court probation. (*See id.* at 4–5.)

But Judge Fouratt also noted that Mr. Dickerson was in poor physical health. (*Id.* at 4.) Mr. Dickerson requires the assistance of a walker, has myriad, chronic medical issues—including chronic obstructive pulmonary disease, hypertension, diabetes, high blood pressure, Hepatitis C—and Mr. Dickerson receives regular dialysis treatment for his failing kidney. (*Id.*) And, after interviewing Mr. Dickerson's father, Judge Fouratt found the senior Mr. Dickerson to be a credible, well-meaning person capable of supervising Mr. Dickerson as a third-party custodian. (*Id.* at 5.) Accordingly, Judge Fouratt determined that Mr. Dickerson could be

released as he awaited trial because strict conditions of release, along with a $10,000 cash bond posted by Mr. Dickerson's father, would be enough to ensure that Mr. Dickerson would appear in court as scheduled and not harm the community. (*Id.* at 8–9.)

Crucially, Judge Fouratt did not consider Mr. Dickerson's "colt python" and "kill the motherfucker" texts in deciding to release Mr. Dickerson. Despite another opportunity to do so at the second detention hearing, the government again failed to inform Judge Fouratt of Mr. Dickerson's texts, texts that evinced a deadly threat to the community.

**Government's Appeal**

Pursuant to 18 U.S.C. § 3145(a)(1), the government appealed Judge Fouratt's decision to release Mr. Dickerson. (Doc. 148 at 1.) Among other evidence presented on appeal, the government finally, on its third try, presented to the Court text messages showing Mr. Dickerson's propensity for violence. (*See id.* at 6, 8.) With the benefit of information Judge Fouratt never received, the Court now decides whether Mr. Dickerson should be detained pending trial.

**LEGAL STANDARD**

On an appeal brought under 18 U.S.C. § 3145(a)(1), a district judge reviews a magistrate judge's release order de novo. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

A court may detain a defendant awaiting trial only after holding a detention hearing. 18 U.S.C. § 3142(f). At the detention hearing, the government bears the burden of either proving that the defendant is a flight risk by a preponderance of the evidence, or proving that the defendant is a danger to the community by clear and convincing evidence. *Cisneros*, 328 F.3d at 616. If the government satisfies either of its burdens, then the Court may find that "no condition or combination of conditions will reasonably assure the appearance of the person as required and

the safety of any other person and the community." *See* 18 U.S.C. § 3142(e). Upon such a finding, the Court must detain a defendant pending trial. *See Id.*

But before finding that "no condition or combination of conditions will reasonably assure" that the defendant does not flee and that the defendant does not harm the community, the Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties . . . past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Cisneros*, 328 F.3d at 617 (citing 18 U.S.C. § 3142(g)).

Further, in certain circumstances the Court also adopts a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *See* 18 U.S.C. § 3142(e)(3). One such circumstance is when the Court has probable cause to believe the defendant committed an offense for which the maximum term of imprisonment is ten years or more under the Controlled Substances Act. 18 U.S.C. § 3142(e)(3)(A).

## DISCUSSION

Mr. Dickerson is subject to the rebuttable presumption that "no condition or combination of conditions will reasonably assure" his appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A). In light of the government's evidence, gained from

extensive physical and electronic surveillance of Mr. Dickerson, the Court agrees with the Grand Jury that there is probable cause to believe Mr. Dickerson was part of a conspiracy to distribute at least 50 grams of methamphetamine. If convicted on the conspiracy offense, Mr. Dickerson faces a maximum sentence of 40 years imprisonment, exceeding the ten years required to trigger the presumption. 21 U.S.C. § 841(b)(1)(B).

Mr. Dickerson has rebutted the presumption that he would be a flight risk. To be sure, there are facts suggesting Mr. Dickerson would flee: he is charged with an offense involving narcotics; the weight of the evidence against him is very strong; he has had multiple brushes with the law; and Mr. Dickerson has a history of missing court dates. However, Mr. Dickerson, with his walker, his chronic obstructive pulmonary disease, hypertension, diabetes, high blood pressure, Hepatitis C, and his failing kidney, is not in prime physical condition to flee from the United States government. Additionally, Mr. Dickerson would be under the watchful eye of his father, whom Judge Fouratt found to be a capable, well meaning, and credible third-party custodian. And the senior Dickerson has put his money where his mouth is, posting a $10,000 cash bond for Mr. Dickerson. These facts, along with the strict conditions of release Judge Fouratt articulated in his order granting release, (*see* Doc. 144 at 7-8), are sufficient to assure the Court that Mr. Dickerson will not flee.

On the other hand, Mr. Dickerson has not rebutted the presumption that he poses a danger to the community. The nature of Mr. Dickerson's crimes—involving illegal narcotics—increases both the chances and the danger of Mr. Dickerson's reversion back to criminality: Mr. Dickerson's drug world is a tinderbox of addiction, danger, and desperation. The Court cannot risk that Mr. Dickerson can refrain from reentering the drug world, and Mr. Dickerson's proclivity for violence—"kill the motherfuckers"; "they stole my colt python"—is a perilous

spark that may ignite deadly harm, an unacceptable danger to the community that Mr. Dickerson has yet to rebut.

## CONCLUSION

For the reasons above, the Court revokes the Magistrate Judge's order of release for Mr. Dickerson and orders Mr. Dickerson be detained pending trial.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**